305 So.2d 817 (1974)
Benjamin HANKS and John Leggett, Appellants,
v.
The STATE of Florida, Appellee.
No. 74-627.
District Court of Appeal of Florida, Third District.
December 31, 1974.
Rehearing Denied January 28, 1975.
*818 Phillip A. Hubbart, Public Defender, and Mark King Leban, Asst. Public Defender, and Arthur R. Riccio, Jr., Legal Intern, for appellants.
Robert L. Shevin, Atty. Gen., and Stephen V. Rosin, Asst. Atty. Gen., for appellee.
Before HENDRY, HAVERFIELD and NATHAN, JJ.
PER CURIAM.
This is an appeal by two co-defendants from a conviction for robbery.
Appellants submit three points which they contend constitute reversible error. Actually each point stems from an in-court identification made by two eyewitnesses to the robbery, a husband and wife.
Under two points, the appellants contend that they should have received a severance and a judgment of acquittal.
It is urged that the increased likelihood of an irreparable mistaken identification required the trial judge to grant a severance.
Further, appellants argue that because the evidence of identification was insufficient the court should have granted their motion for a judgment of acquittal at the close of the state's case.
Finally, as a third point, appellants argue that the in-court identification in this case was tainted by various pretrial "showups" in which the witnesses were given the opportunity to view the defendants seated together.
There are well-established principles of law governing our review of the appellants' first two contentions.
On appeal, the defendants have the burden of demonstrating a palpable abuse of discretion by the trial judge in failing to grant a severance. State v. Talavera, Fla. 1971, 243 So.2d 595; Grech v. State, Fla.App. 1971, 243 So.2d 216; Rodriguez v. State, Fla.App. 1970, 237 So.2d 772.
In the instant case, appellants contend that they were entitled to a severance solely because they were thrown together in a single prosecution where allegedly there was a high probability of misidentification or a false identification.
Our review of the record convinces us that the state properly proved identity, and therefore we conclude this point is without merit.
With respect to the appellants' assertion that they were entitled to a judgment of acquittal, it is the law that a defendant who moves for a judgment of acquittal admits all facts introduced into evidence and every inference favorable to the state which may be drawn from the evidence. Lett v. State, Fla.App. 1965, 174 So.2d 568; Dancy v. State, Fla.App. 1973, 284 So.2d 452.
In our view, the record reveals not that the evidence as to identity was insufficient, but to the contrary, as already stated, the state offered adequate proof of identity.
Lastly, we find little merit in appellants' contention that the in-court identification was tainted by the pre-trial "showups" made by the defendants.
The record shows that the trial judge required the prosecution to lay a predicate for the identification by establishing that *819 the eyewitnesses, Mr. and Mrs. Quetglas, were basing their identification upon their observations made on the night of the robbery and not upon subsequently discovered facts.
The witnesses positively identified the appellants as two of the men who committed the robbery. In our view, the appellants have not shown any taint to the identification. See, Rivers v. State, Fla. 1969, 226 So.2d 337, 339-340; Johnson v. State, Fla.App. 1972, 263 So.2d 295; Gilmore v. State, Fla.App. 1970, 240 So.2d 179.
As we perceive the appellants' argument under this last point, it seems that they are making a novel contention. Appellants concede that there were no irregularities or illegalities in the line-up which was held in this case.
Rather, they argue that it was the procedure subsequent to the line-up, but before trial, of "parading" the defendants before the witnesses which colored the impressions of the latter.
The appellants do not detail for the benefit of this court the specific courtroom "showups" [defined by the United States Supreme Court as a one-on-one confrontation between the witness and the defendant. See Foster v. California, 394 U.S. 440, 89 S.Ct. 1127, 22 L.Ed.2d 402 (1969)] which allegedly tainted the in-court identification made at trial.
They simply make the broad assertion that the showups taken together invariably tainted the identification.[1] We note, however, that "the admission of evidence of a showup without more does not violate due process." Neil v. Biggers, 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972); Stovall v. Denno, 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967).
Ironically, we think that had the defendants not made the various pre-trial appearances, before the witnesses, appellants conceivably could complain they were constitutionally deprived of their right to confrontation and cross-examination.
We are persuaded that the two eyewitnesses, who were patrons in the restaurant which the appellants were accused of holding up, had ample time in which to observe them, and their in-court identification passed constitutional scrutiny.
Therefore, for the reasons stated and upon the authorities cited, the judgments and sentences appealed are affirmed.
Affirmed.
NOTES
[1] Appellants also rely on small portions of the witnesses' testimony at trial, particularly that of Mr. Quetglas, indicating that they had seen the defendants on four or five occasions in the courtroom. Neither of the witnesses speaks English, and they were both answering through an intepreter. In addition, a review of their testimony in its entirety reveals that the witnesses were basing their identification upon their observations the night of the robbery.