328 So.2d 216 (1976)
Roger J. PADRON, Appellant,
v.
STATE of Florida, Appellee.
No. 74-225.
District Court of Appeal of Florida, Fourth District.
January 30, 1976.
Rehearing Denied April 1, 1976.
*217 Michael T. Mallon, West Palm Beach, for appellant.
Robert L. Shevin, Atty. Gen., Tallahassee, and Thomas M. Carney, Asst. Atty. Gen., West Palm Beach, for appellee.
OWEN, Judge.
Appellant, indicted for second degree murder, was convicted of manslaughter. We reverse and remand for a new trial because we conclude that harmful error occurred when the court allowed the State to place into evidence, over appellant's objection, the homicide weapon (a handgun) which had been obtained as a result of a warrantless search of appellant's home subsequent to the shooting.
The search which resulted in the seizure of the weapon occurred under the following circumstances. After the shooting, appellant was arrested at his home, handcuffed and placed in the back seat of a patrol car. Upon inquiry, appellant revealed that the gun which he had used was in his house, but he told the investigating officers in no uncertain terms that they did not have his permission to enter. The house was occupied at the time by appellant's three sons and several of their young friends. After being thus denied access to the house by the father, a deputy sheriff approached the house and spoke to appellant's oldest son, sixteen years old, who also denied him entry. The deputy sheriff thereupon ordered everybody out of the house and into the yard in order to "protect the evidence." The hour was late and it was an extremely cold night, with temperatures of 30° to 40°; appellant's youngest son, aged nine, was ill at the time. In light of these circumstances, and in order to allow the children to remain inside the house, the sixteen year old son capitulated and allowed the deputy sheriff to enter the house, where the revolver was found and seized.
The State, conceding that the warrantless search which occurred here cannot be justified either on the basis of exigent circumstances, or as incident to an arrest, contends that the search was lawful because it was pursuant to legally sufficient consent. Appellant contends that the son's consent was not legally sufficient for two reasons: first, the son did not have the authority to give the consent after his father, who was present during the entire transaction, had categorically refused to do so; second, the consent was not voluntary. We agree with appellant on both grounds, either of which alone would be sufficient basis for holding the search unlawful and requiring suppression of the fruits thereof.
In United States v. Matlock, 415 U.S. 164, 94 S.Ct. 988, 39 L.Ed.2d 242 (1974), the United States Supreme Court discussed the criteria concerning the validity of searches based upon third party consent. The rule was therein stated, at 170, 94 S.Ct. at 993:
"... the consent of one who possesses common authority over premises or effects is valid as against the absent, nonconsenting person with whom that authority is shared." (e.s.)
Common authority derives from the mutual use of the property in question "by persons generally having joint access or control," id., at 171, 94 S.Ct. at 993. Applying this rule to the facts of the instant case, it seems clear to us, in the first instance, that a sixteen year old child does not share "common authority" with his father over the premises of a common dwelling place *218 provided by the latter, see, May v. State, 199 So.2d 635 (Miss. 1967),[1] and even if it could be assumed that the son would succeed to a tantamount authority over the premises in the father's absence, where the father was present and asserted his rights, the son had no authority to override that assertion. Lawton v. State, 320 So.2d 463 (Fla.App.2d 1975); see also, Davis v. United States, 327 F.2d 301 (9th Cir.1964).
The son's consent was further ineffective because, under the circumstances of this case, it cannot be said to have been voluntarily given. In order for a consent to search to be effective, it must be freely and voluntarily given, Jackson v. State, 132 So.2d 596 (Fla. 1961); Garcia v. State, 186 So.2d 556 (Fla.App.3rd 1966), and the evidence that it was so given must be clear and convincing. Sagonias v. State, 89 So.2d 252 (Fla. 1956); Samuels v. State, 318 So.2d 190 (Fla.App.2d 1975). The determination of voluntariness is to be made from the totality of the circumstances. United States v. Matlock, supra; Bailey v. State, 295 So.2d 133 (Fla.App.4th 1974); State v. Othen, 300 So.2d 732 (Fla.App.2d 1974). The question of voluntariness is one of fact for the trial court, Bailey v. State, supra, and its determination will not be disturbed on appeal unless clearly erroneous. James v. State, 223 So.2d 52 (Fla.App.4th 1969).
In the instant case, under the totality of the circumstances mentioned above, we most respectfully disagree with the trial court's conclusion that the consent did "not constitute a yielding to the majesty of the law by the defendant's son, but rather a yielding by the officer to the desires of the defendant's son not to leave the premises." If the deputy's true motive was the protection of the evidence, there were available to him alternatives[2] other than ordering all of the occupants out of the house on an extremely cold night. Requiring the son to make a choice between permitting the search or the unreasonable alternative (under these circumstances) of evacuating the house effectively stripped his "consent" of any voluntary character.
Because of our disposition of the case on this issue, it is unnecessary for us to consider appellant's remaining points on appeal. The conviction is reversed and the cause remanded for a new trial.
Reversed and remanded.
WALDEN, C.J., and MORIARITY, W. HERBERT, Associate Judge, concur.
NOTES
[1] Numerous cases have been decided in this jurisdiction validating third party consents given by a relative of the defendant, but these have all involved situations in which the consenting party was in a superior relationship to the defendant and had an interest in and an authority over the premises to be searched which was equal to or greater than that of the defendant. See, e.g., Rivers v. State, 226 So.2d 337 (Fla. 1969) [grandfather]; Irvin v. State, 66 So.2d 288 (Fla. 1953) [mother]; Tomlinson v. State, 129 Fla. 658, 176 So. 543 (1937) [father]; Addison v. State, 243 So.2d 238 (Fla.App. 4th 1971) [grandmother]; Hills v. State, 238 So.2d 320 (Fla.App. 3rd 1970) [mother]; Rhome v. State, 222 So.2d 431 (Fla.App. 3rd 1969) [mother]. Our research has failed to reveal any Florida case in which the consent of a minor child to search premises owned by a person in a superior relationship has been considered.
[2] See, e.g., Ferrara v. State, 319 So.2d 629 (Fla.App. 1st 1975) wherein the court suggested that any fears the police may have entertained of the destruction of the evidence sought to be seized could have been allayed by keeping the premises under surveillance while other officers obtained a warrant.